**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**December 27, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

GEORGE JOHN KOUFOS,

        Defendant-Appellant.

Nos. 10-2195, 10-2199, 10-2200

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. Nos. 1:10-CR-00586-LH-1, 1:07-CR-01866-LH-1, 1:10-CR-00275-LH-1)**

---

Richard Winterbottom, Assistant Federal Public Defender, Office of the Federal Public Defender for the State of New Mexico, Albuquerque, New Mexico, for Defendant-Appellant.

Laura Fashing, Assistant U.S. Attorney, (Kenneth J. Gonzales, United States Attorney, with her on the brief), Office of the United States Attorney for the State of New Mexico, Albuquerque, New Mexico for Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **TYMKOVICH,** Circuit Judge, and **FREUDENTHAL,** District Judge.*

---

**FREUDENTHAL**, District Judge.

---

    * The Honorable Nancy D. Freudenthal, Chief United States District Judge for the District of Wyoming, sitting by designation.

It is a federal crime for a convicted felon to be in unlawful possession of a firearm. 18 U.S.C. § 922(g)(1). Under the United States Sentencing Guideline Manual (USSG), the ordinary base offense level for such conduct is level 14.[1] However, if the unlawful possession occurred after the felon had a prior felony conviction for a crime of violence, the base offense level increases to level 20. The instant case is another in a series of cases asking us to determine if a particular prior conviction was for a crime of violence as defined by USSG §4B1.2.

Following a determination that Defendant George Koufos had a prior conviction for a crime of violence, the district court sentenced Koufos to a total term of 76 months' imprisonment for four offenses: felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and two charges of bank fraud in violation of 18 U.S.C. § 1344. According to Koufos, the district court erred when it considered his 1990 conviction for a 1986 escape from custody as a crime of violence under USSG §2K2.1(a)(4)(A), and by imposing a procedurally unreasonable sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[1] All USSG citations refer to the 2009 U.S. Sentencing Commission Guidelines Manual even though the offenses under consideration for sentencing occurred in 2006 (Vermont and New Hampshire Indictments) and 2007 (New Mexico Indictment). The Probation Officer reported that the 2006 and 2009 editions of the Guideline Manual were reviewed which reflected no changes, and therefore the probation officer applied the 2009 Manual for guideline computations.

I.
*Factual Background*
*1990 Conviction for 1986 Escape*

On March 26,1986, Koufos was arrested in New York by Agents of the Bureau of

Alcohol, Tobacco and Firearms.  ROA, Vol. 1, p. 28.  Following his arrest and on the

same day, Koufos escaped from custody at the United States District Courthouse in New

York while awaiting arraignment.  Id.   Koufos was charged with escape by Information

which states:

> 1. Defendant ... was arrested by Agents of the Bureau of Alcohol, Tobacco and
> Firearms on March 26, 1986 in New York, New York, based on an arrest warrant
> issued by the United States District Magistrate . . . on March 24, 1986 in Newark,
> New Jersey.

> 2. Defendant . . . did escape from custody of the Unites [sic] States District
> Courthouse, New York, New York, while awaiting arraignment after said arrest.

> 3. Defendant . . . did remain at large until his arrest on February 3, 1990.

> 4. On or about March 26, 1986, in the Southern District of New York, the
> defendant, while in custody of the Attorney General and his authorized
> representative, and while in custody under and by virtue of process issued . . . by
> the District of New Jersey [court], unlawfully, wilfully and knowingly did escape
> from the . . . Southern District of New York [federal court].

> In violation of Title 18, United States Code, Section 751(a).

Id.  Title 18 U.S.C. § 751(a) provides as follows:

> Whoever escapes or attempts to escape from the custody of the Attorney General
> or his authorized representative, or from any institution or facility in which he is
> confined by direction of the Attorney General, or from any custody under or by
> virtue of any process issued under the laws of the United States by any court,
> judge, or magistrate judge, or from the custody of an officer or employee of the
> United States pursuant to lawful arrest, shall, if the custody or confinement is by

virtue of an arrest on a charge of felony, or conviction of any offense [be fined or imprisoned or both]....

*2007 and 2008 Charges*

In 2007 and 2008, three federal grand juries in different states returned indictments against Koufos. In 2007, a Vermont federal grand jury accused him of being a felon in possession of a firearm.  Supp. ROA, Vol. 5, pp. 4-5.  That same year, a New Mexico federal grand jury accused him of the same offense plus the charge of felon in possession of ammunition.[2]  ROA, Vol. 1, pp. 4-5.  In 2008, a New Hampshire federal grand jury returned a two-count indictment against Koufos, both counts involving bank fraud.  Supp. ROA, Vol. 4, pp. 6-10

On February 4, 2009, Koufos filed an unopposed motion asking the district court to order a pre-plea presentence report (PSR) in anticipation of pleading guilty not only to the New Mexico indictment, but also to the New Hampshire and Vermont indictments.  Supp. ROA, Vol. 1, p. 9.[3]  The district court consented and a pre-plea PSR was prepared.  Id., p. 11; Supp. ROA, Vol. 3, pp. 3-37.[4]

---

[2] The Vermont and New Mexico indictments were based on different incidents and different firearms.

[3] There are two documents designated as Supplemental Record on Appeal, Volume 1.  This reference is to Volume 1 of the Supplemental Record filed March 9, 2011.

[4] Interestingly, the Form 13 Pre-Plea PSR does not contain the description of the 1986 escape, but only describes the charges from the Information.  See, Supp. ROA, Vol. 3, p. 21, ¶ 69.

*Plea Agreements*

Koufos was offered three separate plea agreements for the three indictments, with

different approaches to the issue of appellate waiver:

The Vermont plea agreement contained no appellate waiver.  Supp. ROA, Vol. 1,

pp. 16-22.[5]

The New Mexico plea agreement included a limited waiver of appeal as follows:

The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a
Defendant a right to appeal a conviction and the sentence imposed.
Acknowledging that, the Defendant knowingly waives the right to appeal the
Defendant's convictions and any sentence within the applicable advisory guideline
range as determined by the Court; except that this waiver does not apply to any
determination as to whether the Defendant's prior convictions constitute crimes of
violence pursuant to the advisory sentencing guidelines.  Both the Defendant and
the government reserve the right to appeal the district court's determination of
whether the Defendant's prior convictions do or do not constitute crimes of
violence. . . .

ROA, Vol. 1, p. 13.

The New Hampshire plea agreement also included a limited waiver of appeal as

follows:

 By entering into this Plea Agreement, the defendant knowingly and voluntarily
waives any right to appeal or to collaterally challenge:

   1.    His guilty pleas and any other aspect of his convictions, including,
         but not limited to, any rulings on pretrial suppression motions or any
         other pretrial dispositions of motions and issues; and

---

[5] This reference is to Volume 1 of the Supplemental Record on Appeal filed
December 22, 2010.

2.      The sentence imposed by the Court if within the guideline range determined by the Court, or lower, or the Court's imposition of the minimum mandatory sentence.  Supp. ROA, Vol. 1, p. 13.[6]

*Sentencing*

The district court held its sentencing hearing on August 17, 2010.  Prior to and at sentencing, Koufos objected to the PSR which characterized his 1990 conviction for the 1986 escape as a crime of violence as defined by USSG § 4B1.2.  ROA, Vol. 1, pp. 16-39, Vol. 3, p. 4.  Characterizing the 1986 escape as a crime of violence resulted in increasing the base offense level for felon in possession from level 14 to level 20.  USSG § 2K2.1(a)(4)(A).  Four levels were added for the specific offense characteristic of use of a firearm in connection with another offense, aggravated assault.  USSG § 2K2.1(b)(6).  Under the multiple count adjustment, USSG § 3D1.4, level 24 was the combined adjusted offense level.  ROA, Vol. 2, p. 15.  After three levels were subtracted for acceptance of responsibility, the Probation Officer calculated the total offense level at 21.  Id. at p. 16.  Koufos' very lengthy criminal history accrued a total of 25 criminal history points,[7] which placed him in criminal history category VI.  As a result, the advisory guideline range for the multiple charges was 77 to 96 months in prison.  Without a crime of violence assigned to him, Koufos' advisory guideline sentencing range would have been 46-57 months in prison.

_____

[6] This reference is to Volume 1 of the Supplemental Record on Appeal filed December 22, 2010.

[7] Koufos received no criminal history points for 29 of his convictions which include 14 felonies.

Consistent with Chambers v. United States, 555 U.S. 122 (2009), both Koufos and the government agreed that escape in violation of 18 U.S.C. § 751(a) is not categorically a crime of violence under the guidelines. Under the modified categorical approach outlined in Shepard v. United States, 544 U.S. 13, 20 (2005), the sentencing court was charged with examining court documents to determine which part of the ambiguous escape statute Koufos was found to have violated.

Koufos argued he pleaded guilty to that part of 18 U.S.C. § 751(a) outlawing escape while in custody by virtue of a process issued by the United States. Because the custody was by virtue of a process, Koufos argued that the custody was constructive and the escape was akin to a walkaway from a halfway house which is not a crime of violence. The government disagreed, arguing the Information can be read more broadly to include a charge of escape from the custody of an officer or employee of the United States pursuant to lawful arrest. Under this reasoning, the government argued Koufos' plea and conviction was to a charge of escape from actual secure custody.

The district court considered the arguments and ruled that Koufos' 1990 conviction for escape was a crime of violence. The court viewed the Information as stating facts that Koufos was arrested on March 26, 1986 and, on the same day, while awaiting arraignment after the arrest and without the grant of any kind of release from the arrest custody by the magistrate judge, Koufos escaped from custody at the courthouse. ROA, Vol. 3, p. 9, 21-22. In commenting on these facts, the court stated, "[w]hen there is a prisoner in custody in a federal courthouse, it must be assumed as matter of fact as part

-7-

of the language of this [Information] that there are people who are armed and who are there to prevent escape.  So why isn't that a powder keg ready to explode when somebody attempts to escape?" Id. at p. 10. The district court concluded the conduct of Koufos presented a serious potential risk of injury to another and was, therefore, a crime of violence.  Id. at p. 22.

In imposing its sentence, the sentencing court granted the government's downward departure motion which requested the court "depart down 20 months from the applicable USSG advisory guideline 20."[8]  ROA, Vol. 1, p. 83, Vol. 3, p. 31.  The court departed downward two levels (level 19), which resulted in a guideline sentencing range of 63 to 78 months for criminal history category VI.  Id., p. 35-36.  The court sentenced Koufos to 76 months in prison. Vol. 1, p. 98.

II.
*Analysis*

Koufos argues that the district court erred (1) when it held Koufos' escape conviction was a crime of violence under USSG § 2K2.1, and (2) by imposing a procedurally unreasonable sentence when it granted the government's motion for a 20 month guideline reduction, but it only reduced the guidelines by 14 to 18 months.

---

[8] There is no "guideline 20."  This language may be a reference to the base offense level 20 under USSG § 2K2.1(a)(4)(A) which applies if the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense.

*A. Waiver*

The Government may raise the issue of waiver of appeal in its principal brief, as it did here. United States v. Ibarra-Coronel, 517 F.3d 1218, 1221 n. 3 (10th Cir. 2008). We review de novo the question of whether a defendant's waiver of his appellate rights in a plea agreement is enforceable. Id. at 1221. We also strictly construe the appeal waiver and read any ambiguities against the Government and in favor of Defendant's appellate rights.  Id.

In determining whether Koufos' appellate waiver is enforceable, we consider the following three prongs: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir.2004)(en banc) (per curiam).  We conclude the disputed issues on appeal fall outside the scope of the waiver.

There is no dispute that all cases were consolidated for sentencing.  Because of the consolidated sentencing, the PSR grouped together Koufos' two felon in possession cases (Vermont and New Mexico) as Group 1 and his two counts of bank fraud as Group 2 (New Hampshire).  This grouping was required to arrive at the greater adjusted offense level under the multiple count adjustment in USSG § 3D1.4.  The crime of violence issue is present only in the Group 1 cases, and the Group 1 cases represent the greater adjusted offense level of 24.

In terms of the Group 1 cases, there was no appellate waiver in the plea agreement governing the offense committed in Vermont.  There was a limited appellate waiver governing the offense committed in New Mexico, which specifically acknowledges that Koufos did not waive his right to appeal any determination as to whether his prior convictions constitute crimes of violence pursuant to the advisory sentencing guidelines. The fact that the plea agreement for the New Hampshire bank fraud Indictment does not reserve the crime of violence issue is inconsequential.  That New Hampshire plea agreement not only represented the lower adjusted offense, but it concerned an offense governed by a guideline which has no crime of violence enhancement.

Therefore, we conclude the crime of violence issue falls outside the scope of the waivers in the only two plea agreements potentially affected by a crime of violence enhancement.  Our conclusion of no waiver was also recognized at the time of sentencing when defense counsel advised the sentencing court that Koufos reserved "the right to appeal the escape question" and the court responded, "[t]hat's acceptable to me."  ROA, Vol. 3, p. 42.

On the second appeal issue, procedural reasonableness, we also conclude this issue is not precluded by the appellate waiver. As noted above, the plea agreement for the Vermont Indictment contained no appellate waiver.  Because the offense covered by the Vermont Indictment was within Group 1 and that group was the greater adjusted offense level group, the plea agreement for the Vermont Indictment controlled the outcome of

Koufos' sentence.  Therefore, Koufos may challenge the procedural reasonableness of the

sentence he received.

*B. Crime of Violence.*

Whether a prior conviction qualifies as a "crime of violence" as defined by USSG

§ 4B1.2(a) is a question of statutory construction that we review de novo. United States v.

Charles, 576 F.3d 1060, 1066 (10th Cir.2009) (citation omitted). When interpreting the

guidelines, "we look at the language in the guideline itself, as well as at the 'interpretative

and explanatory commentary to the guideline' provided by the Sentencing Commission."

Id. (citation omitted). "Commentary to the Guidelines 'is authoritative unless it violates

the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading

of, that guideline.'" Id. (citation omitted).

Under USSG § 2K2.1(a)(4), the base offense level 20 applies if the defendant

commits the offense of being a felon in possession of a firearm after he sustained a felony

conviction of a crime of violence.  The guidelines define a "crime of violence" as:

[A]ny offense under federal or state law, punishable by imprisonment for a term

exceeding one year, that –

> (1)  has as an element the use, attempted use, or threatened use of
> physical force against the person of another, or
>
> (2)  is burglary of a dwelling, arson, or extortion, involves use of
> explosives, or otherwise involves conduct the presents a serious
> potential risk of physical injury to another."

USSG § 4B1.2(a).

-11-

Here the parties agree, and we concur, that the escape statute in question, 18

U.S.C. § 751(a), encompasses both conduct that would qualify as a crime of violence and

conduct that would not.  The Supreme Court previously discussed § 751(a)'s broad scope

in the context of sentencing under the Armed Career Criminal Act (ACCA) and

recognized that defendants are convicted under § 751(a) for crimes ranging from violent

jailbreaks to non-violent walkaways to failures to report for incarceration or return to

custody. See Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484

(2009).   In Charles, 576 F.3d at 1068, we recognized the need to reexamine the impact of

Chambers on our prior holdings that all escape convictions are crimes of violence for

purposes of the career offender provisions.  Because § 751(a) is overly inclusive by

encompassing multiple crimes when some qualify as crimes of violence while others do

not, we employ a modified categorical approach to determine whether the prior offense

was a crime of violence.

Under a modified categorical approach, we examine "the statutory elements, the

defendant's charging documents, plea agreement and colloquy (if any), and the

uncontested facts found by the district judge to determine whether the particular

defendant's conduct violated the portion of the statute that is a crime of violence." United

States v. Wise, 597 F.3d 1141, 1144 (10th Cir.2010).  This approach does not involve a

subjective inquiry into the facts of the case; instead, we seek to determine "which part of

the statute was charged against the defendant and, thus, which portion of the statute to

-12-

examine on its face." United States v. Sanchez-Garcia, 501 F.3d 1208, 1211 (10th

Cir.2007) (internal quotation marks and citation omitted).

The parties agree that Koufos' prior escape conviction does not have as an element

"the use, attempted use, or threatened use of physical force against the person of another"

under USSG § 4B1.2(a)(1) and is not one of the specifically listed offenses under §

4B1.2(a)(2) or the accompanying commentary. Thus, to determine whether Koufos'

escape conviction constitutes a "crime of violence," we are called upon to engage in a

two-part inquiry. First, we consider "whether the offense 'presents a serious potential risk

of physical injury to another,' as required by the text of §4B1.2." Wise, 597 F.3d at 1144

(quoting USSG § 4B1.2(a)(2)). Second, "we must determine whether the offense is

'roughly similar, in kind as well as degree of risk posed,' to the enumerated crimes in

§ 4B1.2(a)(2), namely, burglary, arson, extortion, or crimes involving explosives." Id.

(quoting Begay v. United States, 553 U.S. 137, 143, 128 S.Ct. 1581, 1585, 170 L.Ed.2d

490 (2008)). A crime is "'roughly similar'" to the crimes listed in § 4B1.2(a)(2) if it

"'typically involve[s] purposeful, violent, and aggressive conduct.'" Wise, 597 F.3d at

1144 (quoting Begay, 553 U.S. at 144-145) (alteration in Wise)).

This two-part inquiry is derived from the Supreme Court's decision in Begay.

There, the Court addressed a challenge to a provision of the Armed Career Criminal Act

(ACCA), 18 U.S.C. § 924(e)(2)(B),[9] that mandates a 15-year prison term for felons in

---

[9] Under the ACCA:

[T]he term "violent felony" means any crime punishable by imprisonment or a

(continued...)

-13-

unlawful possession of a firearm who have three prior convictions for a violent felony or serious drug offense. Rejecting the Government's argument that failure to report showed "the offender's, special, strong aversion to penal custody" as "beside the point," the Court reiterated that the core inquiry is "whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury.'" Chambers at 692 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).  The Court also rejected an interpretation of 18 U.S.C. § 924(e)(1)'s residual clause that would allow all crimes presenting a serious risk of physical injury to qualify as a violent felony under the reasoning that certain crimes (such as driving under the influence) "need not be purposeful or deliberate." Begay, 553 U.S. at 145.  Instead, the predicate offense must be "roughly similar in kind as well as in degree of risk posed" to the example crimes of burglary, arson, extortion, and the use of explosives. Id. at 143. The listed crimes "all typically involve purposeful, 'violent,' and 'aggressive' conduct"

---

[9](...continued)
term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that-
(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. 18. U.S.C. § 924(e)(2)(B).  Thus, the only difference between § 924(e)(2)(B)(ii)'s residual definition of a violent felony and USSG §4B1.2(a)'s corresponding definition is that the latter lists "burglary of a dwelling" rather than "burglary" as an example of an offense that "presents a serious potential risk of physical injury to another."

-14-

rather than simple negligent or reckless conduct, with the listed crimes of burglary and arson in particular revealing "a degree of callousness toward risk." Id. at 144-145; 146.

Begay was followed by Sykes in the continuing effort to address the question of what crimes count as "violent felon[ies]" under the ACCA. Sykes v. United States, __ U.S. __, 131 S. Ct. 2267, 180 L.Ed.2d 60 (2011). Sykes' predicate felony was vehicular flight, which the Court concluded is a violent felony for purposes of the ACCA. The Court reasoned that defying a law enforcement command by fleeing in a car shows an indifference to the safety of property and persons which has "violent - even lethal - potential for others." Id. at 2273. Further, comparing vehicular flight to the crime of burglary, a crime which "is dangerous because it can end in confrontation leading to violence," the Court concluded that vehicle flights "by definitional necessity occur when police are present," "is a direct challenge to an officer's authority," and "is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase." Id. at 2273-2274 (referencing James v. United States, 550 U.S. 192, 200, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007)). In addressing Begay, the Court noted that vehicular flight is not like driving under the influence, which the Court analogized as "a strict liability, negligence, or recklessness crime." Id. at 2276.

Koufos argues the Information charging the escape does not specify that he was "under arrest" at the time of his escape, which would suggest he was in secure actual custody of an officer of the United States. Rather, Koufos escaped "after said arrest." Relying on Charles, 576 F.3d 1060, Koufos argues he violated only that portion of §

-15-

751(a) making it a crime to escape from custody under or by virtue of any process issued

under the laws of the United States by any court, judge, or magistrate judge which is not a

crime of violence but rather is tantamount to walking away from constructive, nonsecure

custody such as a halfway house.  We disagree.

      The facts from the Information disclose a wilful act committed by Koufos in a

purposeful manner which is more provocative than a burglary.  Koufos was arrested and

taken to a federal courthouse for arraignment.  He escaped "while in custody of the

Attorney General and his authorized representative."   ROA, Vol. 1, p. 29.  He did not

merely escape from custody by virtue of a process issued by a court.  Returning to the

language of the statute, it thus appears that Koufos was charged under the portion of §

751(a) that prohibits the "escape[] or attempt[ed] . . . escape . . . from the custody of an

officer of employee of the United States pursuant to lawful arrest . . . ."

      Having identified the precise portion of § 751(a) that Koufos was charged under,

the issue then becomes whether this portion of § 751(a) necessarily constitutes a "crime

of violence."  Clearly, this portion of § 751(a) does not fall within the scope of U.S.S.G. §

4B1.2(a)(1)'s definition of "crime of violence" because it does not "ha[ve] as an element

the use, attempted use, or threatened use of physical force against the person of another."

Likewise, this portion of § 751(a) does not fall within the scope of the initial portion of

U.S.S.G. § 4B1.2(a)(2)'s definition of "crime of violence" because it does not involve the

"burglary of a dwelling, arson, . . . extortion, [or the] use of explosives . . . ."  That leaves

only the question of whether this portion of § 751(a) "involves conduct that presents a

serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a)(2).

Chambers is helpful to the resolution of this question.  In concluding that the

"failure to report" crime at issue before it did not involve conduct that presented a serious

potential risk of physical injury to another, the Supreme Court in Chambers first noted

that, "[c]onceptually speaking, the crime amount[ed] to a form of inaction, a far cry from

the purposeful, violent, and aggressive conduct potentially at issue when an offender uses

explosives against property, commits arson, burgles a dwelling or residence, or engages

in certain forms of extortion."  555 U.S. at 128 (internal quotation marks omitted).  The

Court also relied heavily on a United States Sentencing Commission Report on Federal

Escape Offenses in Fiscal Years 2006 and 2007 that "identifie[d] every federal case in

2006 or 2007 in which a federal sentencing court applied the Sentencing Guideline,

'Escape, Instigating or Assisting Escape,' . . . and in which sufficient detail was provided

. . . about the circumstances of the crime to permit analysis."  Id. at 129.  Citing the

portions of the report that calculated "the likelihood that violence would accompany

commission of the escape or the offender's later apprehension," the Court noted that of

the 160 failure-to-report cases identified in the report, "none at all involved violence—not

during commission of the offense itself, not during the offender's later

apprehension—although in 5 instances (3.1%) the offenders were armed."  Id.  The Court

concluded that "[t]he upshot [wa]s that the study strongly support[ed] the intuitive belief

that failure to report does not involve a serious potential risk of physical injury."  Id.

-17-

Employing a similar analysis here, it is clear, "conceptually speaking," that the form of escape that Koufos was charged with committing, i.e., escaping or leaving law enforcement custody, requires affirmative action (in contrast to the crime of failure to report), and likely poses a serious potential risk of physical injury not only to the law enforcement officers, but also to the public at large.[10]   Notably, the statistics contained in the Sentencing Commission report cited in <u>Chambers</u> confirm these assumptions.  Of the thirteen cases where a defendant left law enforcement custody, two (or 15.4%) resulted in injury.  This injury percentage (15.4%) was the highest of the five categories of escape catalogued in the report (even higher than the injury percentage for escapes from secure custody, such as jail or prison).

Thus, in sum, we conclude that the type of escape Koufos was charged with committing involves a serious potential risk of physical injury.  We in turn conclude that the district court was bound to classify that prior offense as a crime of violence for

---

[10] A divided panel of the Sixth Circuit recently held that a defendant's escape from police custody in a courtroom is not a violent felony for sentencing purposes if the courtroom was not a secure facility.  <u>See</u> <u>United States v. Oaks,</u> No. 06-6056, 2011 WL 6224551, at *1 (6th Cir. Dec. 15, 2011).  District Judge Hood, sitting by designation, dissented.  Judge Hood was "hard pressed to imagine an individual who is significantly more likely than others to attack, or physically to resist, than an apprehender, thereby producing a serious potential risk of physical injury, than someone who flees from law enforcement custody during an appearance in a matter in which he is facing felony charges."  <u>Id.</u> at *2 (Hood, J., dissenting) (internal quotation marks omitted).  As we do in this case, Judge Hood relied on the Sentencing Commission's report to conclude that the defendant's escape from a courtroom could be considered a violent felony under <u>Chambers</u>.  <u>Id.</u>

-18-

purposes of U.S.S.G. §§ 4B1.2(a) and 2K2.1(a)(4), and correctly adopted a base offense level of 20 pursuant to § 2K2.1(a)(4).

*C. Reasonableness of Sentence.*

We review a criminal defendant's sentence for reasonableness, deferring to the district court under the "familiar abuse-of-discretion standard of review." Gall v. United States, 552 U.S. 38, 46, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). Reasonableness review has a procedural and a substantive component. This case concerns Koufos' claim of procedural error, specifically that the district court failed to explain why it only reduced the guideline sentence by 14 to 18 months after it granted the government's motion for a 20 month guideline reduction.

A court may commit procedural error in imposing a sentence by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id. at 51, 128 S.Ct. 586. A sentence imposed within the properly calculated advisory range is entitled to a rebuttable presumption of reasonableness. United States v. Sanchez-Juarez, 446 F.3d 1109, 1114 (10th Cir. 2006).

In reviewing the record, we conclude the district court gave a procedurally adequate explanation for its two level downward departure and its sentence of 76 months imprisonment.  The government recommended the court "depart down 20 months from the applicable USSG advisory guideline 20." There is no "guideline 20." The sentencing

-19-

court commented that it seriously considered not granting the government's motion for

downward departure because of Koufos' criminal history, but it would do so.  ROA, Vol.

3, p. 38.  As to Koufos' criminal history, the court remarked:

> I've been on the bench for nearly 18 years.  I've never seen a Presentence Report
> that has the defendant having been convicted of so many felonies.  Thirty-seven.
> That's over his lifetime.  He's lived a lifetime of crime.  Only in those cases
> involving continual reentry into the United States by illegal alien[s] have I seen so
> many aliases, Social Security numbers, everything else that indicates a life of
> crime.  A life of crime has resulted in 37 felony convictions.  I don't know how
> many years this man has been in prison, but it's a lot . . . .  I have serious doubts
> that this man is going to change ever, ever, ever.

Id. at pp. 36-37.

There is no procedural issue here.  Rather, Koufos' complaint is that the district

court should have reduced the top and the bottom of the guideline range for offense level

19, criminal history VI, to arrive at a new range of 57 to 76.  However, that result is not a

recognized guideline range.  Applying the 20 month motion for downward departure to

the bottom of the otherwise applicable guideline range would have resulted in a three

level reduction to offense level 18 (57 to 71 months at criminal history category VI).

Applying the 20 month reduction to the top of the guideline range would result in a two

level reduction to offense level 19 (63 to 78 months).  Considering the court's statement

about Koufos' life of crime, the record is clear that, if any departure would be permitted,

the reduction would come from the top of the otherwise applicable guideline range:

> [DEFENSE COUNSEL]: What did you say the guideline range was, Judge,
> with the departure?
> THE COURT: With the departure, it is 63 to 78.

[DEFENSE COUNSEL]: I think that it is 57 to 76. Because it would be – if he's 77 to 96.

THE COURT: Yes, originally.

[DEFENSE COUNSEL]: And 20-month departure for the 5K1.1 would be 57 to 76.

THE COURT: Is that right?

[PROBATION OFFICER]: Your Honor, if you're going to go to the low end or the high end. If it's the low end of the guidelines, it needs to be brought back another level, it is three levels to an offense level 18. And his guideline, if you bring him down three levels to an offense level 18, would be 57 to 71 months.

THE COURT: I'm having difficulty hearing you.

[PROBATION OFFICER]: It depends what the recommendation is. If it is low end of the guideline, he would need to be brought down to three levels to get him at an offense level 18. Criminal History Category VI. And that's 57 to 71 months.

If the recommendation is high or midrange, two levels would bring him to an offense level 19, Criminal History Category VI, and that's a 68-to-79 month range.

THE COURT: All right.

ROA, Vol. 3, pp. 35-36.

Koufos' view that the court erred by "[d]iscussing reduction in terms of levels rather than the government's straightforward motion" lacks merit. There was nothing straightforward about the government's motion. Further, that argument speaks to the substantive reasonableness of the sentence, not to procedural error. However, as to Koufos' argument that the court failed to adequately explain the chosen sentence, we conclude the district court committed no significant procedural error.

III.
*Conclusion*

The judgment of the district court is AFFIRMED. Appellant's motion to seal the brief is GRANTED.

-21-